UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| J.G. 1, et al.,<br><br>Plaintiffs,<br>v.<br><br>MONROE SCHOOL DISTRICT,<br><br>Defendant. | CASE NO. C25-2473JLR<br><br>ORDER |

## I. INTRODUCTION

Plaintiffs J.G. 1 and J.G. 2 ("Parents") move on behalf of their child K.G. (collectively "Plaintiffs") for summary judgment and a stay put order pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. (Mot. (Dkt. # 13); Reply (Dkt. # 23).) Defendant Monroe School District (the "District") opposes the motion. (Resp. (Dkt. # 19).) Having reviewed the parties' filings, the administrative record, and the governing law, the court DENIES Plaintiffs' motion.

## II. BACKGROUND

### A. The IDEA Legal Framework

The IDEA guarantees a free and appropriate public education ("FAPE") to all children with disabilities by establishing certain procedures with which states must comply in order to access federal funds for special education. *See* 20 U.S.C. § 1412. Generally, states deliver FAPEs by devising Individualized Education Programs ("IEPs") for each eligible child. *S.C. by K.G. v. Lincoln Cnty. Sch. Dist.*, 16 F.4th 587, 589 (9th Cir. 2021). An IEP identifies the child's educational needs, outlines the services required to meet those needs, and sets measurable goals to track progress. *See* 20 U.S.C. § 1414(d)(1)(A). The IEP is developed and updated by the "IEP team," which includes the child's parents or guardians, a regular education teacher, a special education teacher, and a representative of the local educational agency. 20 U.S.C. § 1414(d)(1)(B).

In addition to the IEP system, the IDEA sets out specific procedural safeguards to ensure each child receives a FAPE. 20 U.S.C. § 1415(a). If a parent has a complaint about a school district's provision of a FAPE, the parent can initiate an administrative due process challenge. 20 U.S.C. § 1415(b)(6). In Washington, where K.G. and her parents are located, such proceedings occur before an administrative law judge ("ALJ") who reviews the complaint, conducts a hearing, and can exercise broad authority to order appropriate remedies. *See* 20 U.S.C. § 1415(i); ch. 34.12 RCW; WAC 392-172A-05095. In addition to administrative appeals, "[a]ny party aggrieved" by the ALJ's findings "shall have the right to bring a civil action" with respect to a due process complaint in an appropriate federal district court. 20 U.S.C. § 1415(i)(2)(A).

The IDEA provides that the reviewing court shall receive the administrative record, hear additional evidence at the request of a party,[1] and grant relief as it deems appropriate based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(C). When reviewing administrative decisions and findings of fact, the court must give "due weight" to the ALJ, and "shall accord more deference to administrative agency findings that it considers thorough and careful." *L.M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 906 (9th Cir. 2009) (internal quotation marks and citations omitted). The district court "is free to determine independently how much weight to give the administrative findings" but "courts are not permitted simply to ignore [them]." *Id.* (quoting *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir.1996)).

During the pendency of any administrative proceeding pursuant to the IDEA, "the child shall remain in the then-current educational placement" unless otherwise agreed to by the parents and the school district. 20 U.S.C. § 1415(j); WAC 392-172A-05125(1)(a). This is known as the IDEA's "stay put" provision. *See Johnson ex rel. Johnson v. Special Educ. Hearing Off., State of Cal.*, 287 F.3d 1176, 1179 (9th Cir. 2002). Although the IDEA does not define "current educational placement," the Ninth Circuit interprets that phrase to mean "the placement set forth in the Child's last implemented IEP." *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104, 1115 (9th Cir. 2010) (quoting *L.M.*, 556 F.3d at 902). A change in educational placement

[1] Plaintiffs urge the court not to consider evidence the District proffered in its response that was not in the administrative record. (Reply at 3-4.) The court denies Plaintiffs' request because the statute unambiguously allows it to consider additional evidence.

can occur when there is a change in the modality of education or "when there is a significant change in the student's program." *Id.* at 1116.

The Ninth Circuit has recognized three primary purposes for the stay put provision: (1) to "strip schools of the 'unilateral authority they had traditionally employed to exclude disabled students . . . from school[,]'" *Johnson*, 287 F.3d at 1181 (quoting *Honig v. Doe*, 484 U.S. 305, 323 (1988)); (2) to protect children from retaliatory action by schools or agencies, *id.*; and (3) to "prevent school officials from removing a child from the regular public school classroom over the parents' objection[,]" *N.D.*, 600 F.3d at 1115 (internal quotations and citation omitted).

**B. Factual Background**

K.G. is a child with disabilities who completed fourth grade at the District's Maltby Elementary School ("Maltby") during the 2024-2025 school year. (10/16/25 ALJ Order (Dkt. # 17-8) at 2.) Due to a congenital heart defect, K.G. has needed multiple major open-heart surgeries. (*Id.*) As a result of her second surgery in 2018, she developed a complex movement disorder that is characterized by involuntary, uncontrolled movement and requires her to use a wheelchair and/or walker. (*Id.* at 2-3; FAC (Dkt. # 5) ¶ 15.) K.G. is also diagnosed with attention deficit hyperactivity disorder and autism. (10/16/25 ALJ Order at 3.)

These conditions qualify K.G. for an IEP under the IDEA. (FAC ¶ 14); *see generally* 20 U.S.C. § 1400 *et seq*. On October 23, 2024, the District completed a triennial special education reevaluation for K.G. that resulted in an updated IEP for the period from October 30, 2024, to October 29, 2025 (the "October 2024 IEP"), which was

approved by the IEP team, including the Parents. (10/16/25 ALJ Order at 3; *see generally* Cassady Decl. (Dkt. # 17-3 at 101-224) ¶ 2, Ex. 4 (October 2024 IEP).) The October 2024 IEP dictated that K.G. would receive 20 minutes of instruction in math, reading, and writing, four times per week each, from a paraeducator under the supervision of a special education teacher. (October 2024 IEP at 16.) In addition, K.G. received occupational therapy four times per month for 15-20 minutes. (*Id.*) These services were "delivered within the general education setting to promote independence and inclusion." (*Id.* at 17.) At all times, K.G. was to receive "direct student support" from a paraeducator while in the general education setting for a total of 1,810 minutes per week. (*Id.* at 16.)

K.G. undertook the October 2024 IEP for most of the 2024-2025 school year. (*See* 10/16/25 ALJ Order at 4.) During that time, she attended Maltby's elementary-aged public Montessori program, which "is a unique learning environment that is highly student focused with an emphasis on community, collaboration, and peer-to-peer interactions and learning." (Stefani Decl. (Dkt. # 20) ¶ 5.) According to Maltby's principal, Christine Stefani, the nature of the Montessori program means "it would be challenging for any student to have a successful experience if they were not physically present in the classroom." (*Id.*)

On May 28, 2025, the Parents informed the District that K.G. needed a partial heart transplant that summer. (Paratore Decl. (Dkt. # 17-7) ¶ 7, Ex. C (5/23/25 Letter) at 1.) As a result, K.G. was immunocompromised and unable to attend school in person for the rest of the school year and for an unknown period after the surgery. (*Id.* at 2.)

Accordingly, the Parents requested that the District convene an IEP meeting to address the 2025-2026 school year. (*Id.*) The parents outlined a proposed schedule that aimed to replicate K.G.'s then-existing schedule in a completely remote environment. (*Id.* at 2-3.)

On June 13, 2025, the District held an IEP meeting with the Parents. (10/16/25 ALJ Order at 6.) During the meeting, the Parents and the District presented different proposals, but did not agree on an updated IEP, nor could Maltby implement a new structure due to K.G.'s ongoing, medically necessary absence from school. (*Id.* at 6-7.) On June 16, 2025, the District provided the Parents with a Prior Written Notice[2] (the "June 2025 PWN") that proposed initiating home-hospital instruction ("HHI")[3] if K.G. was unable to return to school following her surgery. (*Id.* at 7; Paratore Decl. ¶ 14, Ex. F (June 2025 PWN); Resp. at 4.) The District proposed K.G. join the class's morning meeting for approximately twenty minutes every day and receive 60 minutes per day of remote 1:1 instruction with a paraeducator. (*See* June 2025 PWN.) It also noted that "[a] reevaluation will be initiated in September [2025] to evaluate changes in [K.G.'s] current levels of performance to determine if adjustments to her educational program are indicated." (*Id.*) The Parents rejected this proposal. (10/16/25 ALJ Order at 7.)

---

[2] Pursuant to the procedural requirements of the IDEA, school districts must provide parents with a prior written notice ("PWN") "whenever the local education agency proposes to initiate or change or refuses to initiate or change . . . the identification, evaluation, or educational placement of the child." 20 U.S.C. § 1415(b)(3)(A).

[3] HHI is a tutoring program for students whose documented medical needs prevent them from attending school for a period between four and eighteen weeks. (Paratore Decl. ¶ 13.) In the District, HHI is typically provided by teachers who agree to work for additional pay after school hours and instruction does not exceed two hours per week. (*Id.*)

**C. Administrative and Procedural History**

The Parents filed the underlying administrative due process proceeding with the Washington Office of Administrative Hearings ("OAH") on August 8, 2025. (*See generally* Hearing Request (Dkt. # 17-1).) In part, the Parents alleged that the District's offer of HHI was "in lieu" of K.G.'s IEP, which would deny her a FAPE. (*Id.* at 4-6, 8.) The Parents argued that OAH should order the District to "initiate Parents' Proposal" of full-time, remote education that mirrored K.G.'s previous in-person schedule with concurrent 1:1 support from a paraeducator. (*Id.*) The Parents filed a motion for partial summary judgment in the administrative proceeding on August 29, 2025. (*See generally* Admin MSJ (Dkt. # 17-3).)

Meanwhile, the 2025-2026 school year began on September 3, 2025. (10/16/25 ALJ Order at 9; Paratore Decl. ¶ 16.) During the week of September 15, 2025, K.G. began accessing the remote program outlined in the June 2025 PWN with additional one-on-one education from a certified special education teacher and a "lunch group with peers" facilitated by a paraeducator. (Resp. at 6; 2d Paratore Decl. (Dkt. # 21) ¶¶ 4-5.)

On October 16, 2025, the administrative law judge ("ALJ") issued an order granting in part and denying in part the Parents' motion for summary judgment. (*See generally* 10/16/25 ALJ Order.) As relevant here, the ALJ found that the Parents were entitled to summary judgment on their claim that the District "violated stay-put by refusing to implement [K.G.'s] current IEP via remote video instruction." (10/16/25 ALJ Order at 18.) Specifically, the ALJ concluded "that changing the delivery of [K.G.'s]

special education services to remote instruction does not . . . materially alter[] her educational program." (*Id.* at 20.)

Although the parties agreed that the October 2024 IEP was K.G.'s stay-put placement, they disagreed "on how the IEP should or could be implemented." (*Id.* at 18.) The Parents recognized that K.G. could not receive in-person instruction because of her medical condition but argued that the October 2024 IEP delivered minute-for-minute via remote instruction met the stay-put requirements. (*Id.*) The District responded that the October 2024 IEP necessitates in-person instruction and that implementing remote services for K.G. inherently violated stay put. (*Id.*) The ALJ agreed with the Parents that implementing remote learning for K.G. would "not substantially or materially alter [her] educational program" and that the Parents were entitled to a remedy. (*Id.* at 20.) Importantly, the ALJ did not order the Parents' proposal as a remedy but instead ordered the parties to "convene an IEP meeting [by October 30, 2025,] to determine how to implement the stay-put IEP remotely pending the hearing." (*Id.*)

After two meetings about K.G.'s education plan on October 28 and November 4, 2025,[4] the District issued another PWN on November 6, 2026 (the "November 2025 PWN"). (Resp. at 7-8; *see generally* 2d Cassady Decl. (Dkt. # 17-15) ¶ 14, Ex. 5

---

[4] Plaintiffs allege that "[t]he District refused to meet" as mandated by the ALJ. (*See* Mot. at 10.) The District argues that meetings it had scheduled prior to the 10/16/25 ALJ Order, which they organized with the Parents and took place on October 28 and November 4, 2025, sufficed to meet the ALJ's order, especially because the Parents had limited availability in October due to a family emergency. (Resp. at 7.) The court acknowledges this dispute but declines to determine whether the District met its obligations under the 10/16/25 ALJ Order by conducting the meetings because it is irrelevant to the present analysis.

(November 2025 PWN).) The November 2025 PWN noted that K.G. had accessed a remote program similar to the June 2025 PWN program since September 2025, but with ten additional minutes of 1:1 instruction with a paraeducator per day, regular physical therapy sessions, and an hour of 1:1 instruction with a special education teacher per day for math, reading, and writing. (November 2025 PWN at 1.) The November 2025 PWN retained the 20-minute virtual lunch with peers and provided K.G. additional opportunities to access the general education classroom through special activities like birthdays and holiday celebrations. (*Id.*) The District indicated that this program met its stay-put obligations. (*See id.*) Dissatisfied with the District's interpretation, the Parents filed a motion for clarification of K.G.'s stay-put order with the ALJ on November 10, 2025. (Resp. at 8; *see* 2d ALJ Mot. (Dkt. # 17-14).)

On November 25, 2025, the ALJ issued an order finding that the District's remote schedule K.G. accessed since September 2025 "met its stay-put obligation." (11/25/25 ALJ Order (Dkt. # 17-16) at 6.) The ALJ reasoned that there are "necessary differences between the delivery of services in a remote setting versus an in person setting [that] preclude a minute-for-minute delivery of the services in the" October 2024 IEP. (*Id.*)

On December 5, 2025, the Parents initiated a second administrative due process proceeding, arguing that the District failed to implement or amend the October 2024 IEP as required by their stay-put obligations. (Chavez Decl. (Dkt. # 22) ¶ 3; *id.* ¶ 4, Ex. B at 2.) The case was initially assigned to the same ALJ but was subsequently reassigned after the Parents filed an affidavit of prejudice. (*Id.*) On January 12, 2026, the ALJ in the second action upheld the initial stay put order. (*See* Am. Compl. (Dkt. # 5) ¶ 29.)

Plaintiffs filed their initial complaint in this court on December 5, 2025, and amended the complaint on February 4, 2025. (*See generally* Compl. (Dkt. # 1); Am. Compl.) Plaintiffs ask the court to vacate the elements of each administrative order that relate to stay put, to declare that K.G. is entitled to a "full-time, remote, video delivery of the educational program described in the October 2024 IEP," and to award them attorney's fees and "additional relief as may be just and proper." (Am. Compl. at 12-13.)

Plaintiffs allege that during the administrative proceedings, K.G. "became despondent and depressed and could not understand why her program was so limited." (Mother Decl. (Dkt. # 23-1) ¶¶ 13-14.) After consulting multiple medical professionals, the Parents placed K.G. in private school on March, 5, 2026, because she continued "struggling significantly" with the District-provided "limited school schedule." (*Id.* ¶¶ 15-20.) K.G.'s program with the private school started with "a slow introduction of a few virtual classes," although she continued to join Maltby's morning meeting and virtual lunch sessions. (*Id.* at 20.) K.G. began one-on-one in-person classes at the private school on April 29, 2026, after her medical team cleared her to do so. (*Id.*) The District met with the Parents on April 30, 2026, to discuss K.G.'s education plan and sent consent paperwork necessary to begin a reevaluation on May 7, 2026. (2d Paratore Decl. ¶¶ 11-12.) As of August 4, 2026, the Parents had not returned their written consent for reevaluation. (*Id.* ¶ 12.) Besides the morning meeting and virtual lunches, Plaintiffs have expressed no interest in educational services from the District, even after K.G. was cleared for in-person instruction. (*Id.* ¶ 9; Resp. at 21-22.)

On July 5, 2026, Plaintiffs filed the present motion for summary judgment and stay put. (Mot.) Plaintiffs move the court to: (1) vacate the ALJ orders finding the District met its stay-put obligations from September 2025 to March 2026; (2) issue a stay put order reflecting the Parents' proposed educational program; (3) order "reimbursement and compensatory education;" and (4) "find[] for the Parents granting them prevailing party status." (Mot. at 7.) The motion is now ripe and ready for decision.

## III. ANALYSIS

The court first analyzes the portions of Plaintiffs' motion related to stay put before addressing the remaining summary judgment issues.

### A. The Court Denies Plaintiffs' Stay Put Motion

As an initial matter, the parties disagree on how this court should evaluate Plaintiffs' stay put request. Plaintiffs argue that an automatic injunction framework should apply because they are asking the court to uphold "the ALJ's original determination on Stay Put," which they equate to enforcing a new stay put order. (*See* Mot. at 1; Reply at 3.) The District asserts that because Plaintiffs are "seeking to alter the ALJ's prior decision determining K.G.'s stay put placement," the court must apply the traditional preliminary injunction test set forth in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). (Resp. at 12-14.)

The court agrees with the District. Plaintiffs are correct that a stay put order operates as an automatic injunction, but only when it is invoked in the first instance. *S.C. by K.G. v. Lincoln Cnty. Sch. Dist.*, 16 F.4th 587, 589 (9th Cir. 2021) (citing *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009)). Where a party instead

seeks to modify or void a preexisting stay put order, that party bears the burden to show they meet the traditional preliminary injunction factors. *See E.E. by & through Hutchison-Escobedo v. Norris Sch. Dist.*, 4 F.4th 866, 872-73 (9th Cir. 2021).

Plaintiffs here ask the court to "revers[e] the decision of the [ALJ]" and issue an order dictating that the stay put placement is "the October 2024 IEP implemented virtually[.]" (Mot. at 7.) Although they frame their motion as one "asking the Court to uphold the ALJ's original determination on Stay Put," (Reply at 3), that is fundamentally inaccurate. The ALJ did originally "find that the District should implement the October 2024 IEP remotely" as K.G.'s stay-put placement, but the ALJ also specified that she did not order the Parents' proposed program as a remedy. (10/16/25 ALJ Order at 20.) Instead, the ALJ ordered the Parents and the District to meet within two weeks of the order "to determine how to implement the stay-put IEP remotely." (*Id.*) When the Parents moved for clarification, the ALJ examined the remote program K.G. accessed starting in September 2025 and concluded that "the District ha[d] met its stay-put obligation." (11/25/25 ALJ Order at 6.)

Plaintiffs argue that the original "decision on Stay Put [] required the District to *fully implement* [K.G.'s] October 2024 IEP in a virtual format" and that the ALJ "was wrong when she ruled the District was meeting her original Order for Stay Put." (Reply at 2 (emphasis added).) But the ALJ never ordered the District to "fully implement" the October 2024 IEP. (*See* 10/16/25 ALJ Order at 20.) She indicated that a remote format was appropriate but did not specify an exact program or schedule. (*Id.*) Thus, Plaintiffs' contention that they ask only to uphold the ALJ's original stay put order misinterprets the

10/16/25 ALJ Order, which is best read in conjunction with the 11/25/25 ALJ Order. Accordingly, the court views Plaintiffs' motion as one seeking to modify the ALJ's stay put order, necessitating a traditional preliminary injunction analysis.[5] *See E.E.*, 4 F.4th at 872-73; *Johnson ex rel. Johnson*, 287 F.3d at 1179 (applying preliminary injunction standard when plaintiff challenged ALJ's determination on whether program alterations met stay put obligation).

1. <u>The Preliminary Injunction Standard</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 20. Under *Winter*, Plaintiffs will only receive injunctive relief if they can establish that: (1) they are "likely to succeed on the merits"; (2) they will "likely suffer irreparable harm in the absence of preliminary relief"; (3) the "balance of the equities tips" in their favor; and (4) the injunction sought "is in the public interest." *Id.*; *see also N.D.*, 600 F.3d at 1111-12 (holding the *Winter* factors apply where a motion seeks to affect a stay-put invocation). The Ninth Circuit also applies an alternative "sliding scale" inquiry that dictates "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the

---

[5] The District argues that Plaintiffs "failed to properly raise their claims in the first instance" by ignoring the *Winter* factors and that the present motion "should be denied on this basis alone." (Resp. at 13.) Plaintiffs point out that courts in this district "may consider evidence and argument submitted with a reply that is responsive to arguments raised in the non-moving party's brief in opposition." (Reply at 6 (quoting *United States v. DeBorba*, 713 F. Supp. 3d 1042, 1068 (W.D. Wash. 2024), *aff'd*, 177 F.4th 1005 (9th Cir. 2026)).) Although Plaintiffs maintain that a preliminary injunction analysis is unnecessary, they nonetheless advance arguments in their reply that respond to the District's invocation of the *Winter* factors. (*See* Reply at 7-11.) The court finds it has sufficient information to conduct a preliminary injunction analysis and declines the District's request for a summary denial.

balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (cleaned up and citation omitted).

2. Plaintiffs Are Not Likely to Succeed on the Merits

Plaintiffs argue that they are likely to succeed on the merits because the ALJ's stay put order amounts to "a significant and material change" to K.G.'s educational placement that altered "the Student's special education services, [and] cut off completely her access to the general education curriculum and to her general education peers." (Reply at 7-8; Mot. at 15-18). In effect, according to Plaintiffs, these changes "violat[ed] . . . Stay Put jurisprudence and denied [K.G.] a FAPE." (Mot. at 12.) Accordingly, Plaintiffs urge the court to enter a stay put order requiring "that the October 2024 IEP be delivered exactly as written, but virtually." (*Id.* at 20.)

The District acknowledges that the program outlined in the November 2025 PWN differs from the October 2024 IEP. It points out, however, that the stay put obligation is "not absolute." (Resp. at 17 (quoting *Ms. S. ex rel. G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 (9th Cir. 2003)).) Indeed, courts in this circuit have recognized "that because of changing circumstances the status quo cannot always be exactly replicated for the purposes of stay put." *Van Scoy ex rel. Van Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005); *see also Johnson*, 287 F.3d at 1181 (holding that the "exact same education program" is not necessary to meet stay put obligations). "When the child's last implemented IEP cannot be implemented due to a change in circumstances, stay-put requires that the student receive a placement that, as closely as possible, replicates the last placement." *R.F. by Frankel v. Delano Union Sch.*

*Dist.*, 224 F. Supp. 3d 979, 985 (E.D. Cal. 2016); *see also Ms. S. ex rel. G.*, 337 F.3d at 1134 (holding a change in circumstances requires a school district to implement an educational program "that approximates the student's old IEP as closely as possible"). Under this framework, the District argues that its "program replicated the educational services in [K.G.'s] IEP to the extent possible" given the change in circumstances caused by her unexpected heart surgery. (Resp. at 18.)

Although Plaintiffs have demonstrated that the District's program is different from that of the October 2024 IEP, they have failed to show that those differences amount to a change in placement that violates stay put. Perhaps the largest gap between the District's plan and the October 2024 IEP is the time K.G. spends among her general education peers. K.G. received all of her instruction in a general education setting for the 2024-2025 school year before May 2025, as dictated by the October 2024 IEP, whereas the District's program includes limited peer interaction and time in the general education setting. (*See* Mot. at 16-17; October 2024 IEP; November 2025 PWN.) Plaintiffs, however, provide no support for their conclusory statement that this change "is significant and material" for the purposes of stay-put. (*See* Mot. at 15-18; Reply at 7-8.) They cite *N.D.* to argue that "educational program" definitionally includes "general education" and that changes to a student's general education programs can violate stay put orders. (Mot. at 17 (citing *N.D.*, 600 F.3d at 1116).) Plaintiffs' reliance on *N.D.* is misplaced. Although *N.D.* uses the term "general educational program," *see N.D.*, 600 F.3d at 1116, it refers to the overall educational program, not as Plaintiffs use it to refer

specifically to a non-special education setting, (*see, e.g.,* Mot. at 16 (stating that K.G.'s "special education services were to be delivered in the general education setting")).

Moreover, decreasing a student's time in non-special education settings may, in some instances, violate stay put under *N.D.*, but that case does not support a finding that the District violated its stay put obligations here. *N.D.* dealt with alleged stay put violations resulting from a "system wide administrative decision[]" due to a "fiscal crisis," not changes to an individual education plan. *See id.* at 1108-09. Because Plaintiffs proffer no other support showing they are likely to succeed on the merits, the court finds that this factor weighs against issuing a preliminary injunction. (*See* Mot. at 15-18; Reply at 7-8.)

3. <u>Plaintiffs Have Not Shown Likelihood of Irreparable Harm</u>

Plaintiffs argue that K.G. suffered irreparable harm when she accessed the District's program from September 2025 to March 2026. (Reply at 9.) Specifically, according to K.G.'s therapist, "the substantial reduction in educational access and support limited [K.G.'s] opportunities to make academic progress and maintain previously established social skills." (Hill Decl. (Dkt. # 23-2) ¶ 11.) As a result, K.G. "grew increasingly depressed and her behavior deteriorated to the extent the Parents were required to engage private [Applied Behavior Analysis] services." (Reply at 9 (citing Hill Decl. ¶ 10; Mother Decl. ¶¶ 13-19).) The District argues that any harm Plaintiffs may have suffered cannot be cured by injunctive relief because K.G. is now receiving her education through a private school with no plans to receive education from the District. (Resp. at 15, 21-22; 2d Paratore Decl. ¶ 9, Ex. C.)

Although the court does not doubt the difficulty these educational fluctuations have caused K.G., it finds that injunctive relief will not remedy her harm. Indeed, Plaintiffs even indicate that "the Court has the ability to remedy [K.G.'s] harm through compensatory education," and not necessarily through injunctive relief. (Reply at 10.) Given that K.G. is no longer receiving or seeking education from the District, the court finds that she would not suffer irreparable harm absent a preliminary injunction modifying the ALJ's stay put order.

4. The Balance of the Equities Favors the District

"Before issuing a preliminary injunction, 'courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017) (quoting *Winter*, 555 U.S. at 24, 129 S.Ct. 365).

Plaintiffs argue that "[t]he hardship to [K.G.] in lost educational services during a medically fragile period is weighty." (Reply at 10.) The court again recognizes K.G.'s hardship but finds that granting this injunction would provide no remedy given her lack of plans to attend school in the District going forward. Nor would withholding the requested injunction exacerbate the hardship as it simply retains the status quo. Plaintiffs assert that "the District's only competing interest is the administrative inconvenience of remote delivery," but that appears to be an oversimplification. (*Id.*) They imply that replicating the October 2024 IEP remotely should be straightforward because "there was a camera in the classroom allowing [K.G.] to join the classroom every morning for twenty minutes." (Mother Decl. ¶ 8; *see also* Am. Compl. ¶ 19 (alleging that the remote

program "would not cost the District more than [K.G.'s] in-person IEP program since it would utilize the same staff for the same amounts of time").)

This ignores, however, the "unique learning environment" of a Montessori program. (Stefani Decl. ¶ 5.) Maltby's principal testified that "[a]sking a classroom teacher and a classroom of students to accommodate a student who is not physically present in the classroom would create significant barriers and challenges" under this model. (*Id.* ¶¶ 5-7.) Although an injunction would have little practical effect on the Maltby classroom due to K.G.'s current private placement, it would signal to future litigants that they can unilaterally demand substantial classroom changes altering the dynamics of a unique educational environment to accommodate a single student's medical needs. Accordingly, the balance of the equities tips against injunctive relief.

5. <u>Public Policy Instructs Against Injunctive Relief</u>

Plaintiffs assert that injunctive relief is in the public interest because "the IDEA's stay-put guarantee . . . is Congress's chosen mechanism to protect disabled children from unilateral program changes during disputes[.]" (Reply at 11 (citing *Joshua A.*, 559 F.3d at 1040).) The court agrees that educating children with disabilities is in the public interest and that IDEA protocols, like the stay put requirement, exist to protect said interest. *See Johnson*, 287 F.3d at 1181. But Plaintiffs have failed to show that the District or the ALJ violated stay put or otherwise deprived Plaintiffs of IDEA's protections. *See supra*, Part III.A.2. Moreover, stay put policies are primarily aimed at preventing school districts from taking unilateral action to displace students with disabilities from school. *See Johnson*, 287 F.3d at 1181. That is not the protection

Plaintiffs seek. Plaintiffs initially requested a change to K.G.'s educational program, albeit by necessity due to K.G.'s difficult health circumstances. As a result, Plaintiffs' policy justification for injunctive relief is weakened because the change originated from their request.

The District argues that public policy weighs against injunctive relief because Plaintiffs "did not timely pursue their stay put appeal, [allowing] it to go stale." (Resp. at 23.) Plaintiffs counter that they "did not delay" because they filed the present action just ten days after the ALJ's clarification order and attributes the relatively long court timeline to "a function of the administration in federal court." (Reply at 11; Compl.) The court agrees with Plaintiffs because they timely filed their case and have complied with all court deadlines to date. (*See generally* Dkt.)

The District also asserts that disrupting the ALJ's decision on stay put creates "potential for . . . contradictory rulings" because of the ongoing administrative proceedings. (Resp. at 24; *see also* Chavez Decl. ¶¶ 9-10 (stating due process hearings in the two separate administrative actions were scheduled between August 26 and October 15, 2026).[6]) Given the overlap in issues between the present action and the administrative proceedings, the court finds that there is a public interest in preserving judicial efficiency by avoiding conflicting rulings. Because Plaintiffs' proffered interest in upholding IDEA protections is diminished by their circumstances, public policy warrants against injunctive relief.

[6] The court has received no updates from the parties regarding these hearings.

6. Plaintiffs Do Not Meet Their Preliminary Injunction Burden

As outlined above, the court finds that none of the *Winter* factors weigh in favor of injunctive relief here. As a result, Plaintiffs have not met their burden and are not entitled to injunctive relief under the traditional framework. *See Winter*, 555 U.S. at 20. Nor do Plaintiffs meet their burden under the Ninth Circuit's alternative sliding scale test. *See All. for the Wild Rockies*, 632 F.3d at 1134-35. Plaintiffs' argument that reducing general education opportunities constitutes a material change for the purposes of stay put does pose a legitimate question on the merits, even if Plaintiffs failed to show a likelihood to succeed with that argument. *See supra* Part III.A.2. The court, however, is not satisfied that this argument poses a sufficiently "serious" question on the merits given the lack of caselaw to support Plaintiffs' contention. *See All. for the Wild Rockies*, 632 F.3d at 1134-35. And even if it raises a serious question, the court finds that the equities do not tip "sharply" in favor of Plaintiffs. *Id.*; *see supra* Part III.A.4. Thus, Plaintiffs are not entitled to injunctive relief under the Ninth Circuit standard either. Accordingly, the court DENIES Plaintiffs' motion to modify the ALJ's stay-put order.

**B. Plaintiffs are Not Entitled to Summary Judgment**

Plaintiffs' also argue they are entitled "compensatory education . . . and a finding for the Parents granting them prevailing party status" on summary judgment. (Mot. at 7.) Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing

substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The moving party bears the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Amid their arguments on stay put, Plaintiffs allege that K.G. suffered harm resulting from her limited educational program and that the court can "remedy that harm through compensatory education." (*See* Reply at 9-10.) Defendants do not meaningfully dispute that K.G. suffered depression and academic regression in the time she accessed the District's remote education plan. (*See* Resp. at 20-22.) Plaintiffs, however, have failed to provide any legal support showing that this fact, or others they allege in their filings, entitles them to any remedy as a matter of law. (*See generally* Mot.; Reply.) Thus, the court DENIES Plaintiffs' motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion for summary judgment and for a preliminary injunction modifying K.G.'s stay put order (Dkt. # 13).

Dated this 6th day of November, 2026.

JAMES L. ROBART
United States District Judge